Mark C. Gardy
James S. Notis
Jennifer Sarnelli
**GARDY & NOTIS, LLP**
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, NJ 07632
Tel: 201-567-7377
Fax: 207-567-7337

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GREGORY TRAVALIO and BARBARA TRAVALIO, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI OF AMERICA, MARTIN WINTERKORN, HERBERT DIESS, MICHAEL HORN, JAN BURES, MARK McNABB, JONATHAN BROWNING and SCOTT KEOGH,<br><br>            Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Gregory Travalio and Barbara Travalio ("Plaintiffs"), by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation, review and analysis of filings, press releases and media reports issued by and disseminated by Volkswagen made by Volkswagen AG ("Volkswagen" or the "Company") and

review of other publicly available information concerning Volkswagen.  Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of purchasers of publicly traded ordinary and preferred American Depositary Receipts ("ADRs") of Volkswagen between November 19, 2010 and September 21, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against Volkswagen and its United States subsidiaries, Volkswagen Group of America, Inc. ("Volkswagen America") and Audi of America ("Audi America"), and executives Martin Winterkom, Herbert Diess, Michael Horn, Jan Bures, Mark McNabb, Jonathan Browning and Scott Keogh (collectively the "Defendants").

2.      Volkswagen is one of the world's largest automobile manufacturers.  Throughout the Class Period, defendants engaged in a scheme to defraud investors through materially false and misleading statements and omissions regarding the Company's operations.  Defendants mislead investors by failing to disclose that certain Volkswagen and Audi branded cars with "clean diesel" engines were clandestinely using a sophisticated software defeat device to temporarily reduce emissions when undergoing emissions testing, and thus cheat on the test by producing false emissions data.  Once on the road, those engines would generate far higher emissions than the affected Volkswagen and Audi branded cars falsely reported.  The Company had admitted using the defeat device during the Class Period, at the same time defendants were touting the models as "clean diesels… designed to meet the toughest emission standards." Volkswagen has halted new sales of the Volkswagen and Audi models affected.  The falsified emissions data relate to 482,000 diesel engine vehicles in the United States under the

Volkswagen and Audi brand names (and as many as 11 million vehicles worldwide). Volkswagen CEO Martin Winterkom has resigned, the Company is facing the potential of $18 billion in fines from the United States Environmental Protection Agency ("EPA"), and criminal investigations in the United States and abroad are underway.

3.      The price of Volkswagen ADRs plummeted following new reports of the Company's falsified emissions data, causing significant losses and damages to Plaintiffs and other members of the Class.

## JURISDICTION AND VENUE

4.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C.§§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District, and Volkswagen, Volkswagen America and Audi America are each incorporated in the State of New Jersey.

7.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## THE PARTIES

8.     As set forth in the accompanying certification, incorporated by reference herein, Plaintiffs purchased Volkswagen ADRs during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

9.     Defendant Volkswagen, based in Wolfsburg, Germany, is one of the world's largest automobile manufacturers.  The Company provides its products under the Volkswagen Passenger Cars, Audi, ŠKODA, SEAT, Bentley, Bugatti, Lamborghini, Porsche, Ducati, Volkswagen Commercial Vehicles, Scania, and MAN brand names, as well as financial services under the Volkswagen Financial Services brand name.  Volkswagen ADRs are traded in the United States on the over-the-counter ("OTC") market under the ticker symbol "VLKAY" for Ordinary ADRs and "VLKPY" for Preferred ADRs.

10.    Defendant Volkswagen America is a New Jersey corporation and wholly-owned subsidiary of Volkswagen.

11.    Defendant Audi America is a New Jersey corporation and wholly-owned subsidiary of Volkswagen.

12.    Defendant Martin Winterkorn ("Winterkorn") was Chief Executive Officer ("CEO") of Volkswagen at all relevant times, until his resignation on September 23, 2015.

13.    Defendant Herbert Diess ("Diess") is a member of the Board of Management of Volkswagen, and is Chairman of the Board of Management of the Volkswagen passenger cars brand.

14.    Defendant Michael Horn ("Horn") is the President and CEO of Volkswagen America, and President for the Volkswagen of America brand.  Horn assumed this position in

January 2014.  Horn joined Volkswagen America after 23 years with Volkswagen. Horn previously served as the Global Head of After Sales at Volkswagen.

15.    Defendant Jan Bures ("Bures") is the Executive Vice President for Group After Sales & Service at Volkswagen America.  Bures is responsible for steering the group after-sales strategy, delivery of Volkswagen America parts turnover and profit, parts logistics, wholesale parts operations, contract centers and roadside assistance.  Bures reports directly to Horn.

16.    Defendant Mark McNabb ("McNabb") is Chief Operating Officer of Volkswagen America.  McNabb is responsible for the management of sales, after sales and customer experience for the Volkswagen brand.  McNabb reports directly to Horn.

17.    Defendant Jonathan Browning ("Browning") served as CEO of Volkswagen America from October 2010 until December 2013. Browning joined Volkswagen in June 2010, directing the Company's National Sales Companies.

18.    Defendant Scott Keogh ("Keogh") is President of Audi of America and is in charge of all United States activities of Audi.  Keogh became President in June 2012 after serving as Chief Marketing Officer for six years.

19.    Defendants Winterkorn, Diess, Horn, Bures, McNabb, Browning and Keogh are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company and its subsidiaries, possessed the power and authority to control the contents of Volkswagen's public reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.,* the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions

and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were intentionally being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### *Background*

20.     Volkswagen's sales and marketing efforts in the United States involved the promotion of its diesel vehicles as low-emission, fuel-efficient cars that achieved performance comparable with gasoline vehicles. Volkswagen's marketing campaign was successful, and Volkswagen became the largest seller of diesel passenger vehicles in the United States.

21.     Volkswagen promoted its diesel vehicles as both "clean" and "green," labeling its vehicles as "clean diesel." Indeed, on the "Environment" page of Volkswagen America's website, the Company states that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines[.]"

22.     Volkswagen prominently promoted its clean diesel technology, claiming that it was designed to "meet the toughest emission standards":

> At Volkswagen Group, we are providing that clean diesel technologies are a practical and economically friendly bridge to the fuel alternatives of tomorrow.
>
> Clean Diesel TDI vehicles from Audi and Volkswagen Group are built on innovative turbo-charged direct-injection engine technologies for enhanced fuel

economy. We combine that with the most advanced catalytic converter systems, designed to meet the toughest emission standards. Finally, we use ultra-low-sulfur clean diesel fuel. The result is the best of both worlds for people and the planet:

- More than 30% improvements in real-world fuel economy

- 25% reduction in C02 emissions

- 90% reduction in nitrous oxide emissions

23. Defendants also supported and directed a website to promote the Company's clean diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in aliSO states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

24. Volkswagen's marketing was successful. The Company sold 95,823 diesel passenger vehicles in the United States in 2013, accounting for 23.5% of total sales, and an increase of 6.1% over its 2012 total of 90,294. Audi sold 10,076 diesel passenger vehicles in the United States, an increase of 40% over the 7,195 sold in 2012.

### Defendants' False and Misleading Statements During the Class Period

25. Defendants made numerous materially false and misleading statements and omissions to investors during the Class Period regarding the Company's operations, and its business and financial results and outlook. The materially false and misleading statements and omissions made by Defendants during the Class Period include the following.

26. On November 19, 2010, Volkswagen issued a press release entitled "Environmental Management Has a Long History at Volkswagen," which touted the success of the Company's environmentally friendly technology:

> For the 15th time in succession, the Volkswagen technical development environmental management system has been awarded DIN EN ISO 14001 certification. An "anniversary" brochure has been produced to mark the occasion.

The brochure explains exactly how environmental protection became a core part of the product creation process at Volkswagen.

The Volkswagen technical development environmental management system has today been awarded its latest DIN EN ISO 14001 certificate from TCIV NORD. The ISO/TR 14062 certification first achieved in 2009 has also been renewed. The standard stipulates binding conditions for the integration of environmental aspects into product design and development.

"Volkswagen set itself the goal back in 1995 of achieving continuous improvements in the environmental compatibility of its products and production processes," said Günter Damme, Head of Environment at Volkswagen. "The technical development environmental management system is the key to ensuring that each and every new Volkswagen is more environmentally friendly than its predecessor".

27.    On January 4, 2011, Volkswagen America issued a press release entitled "Volkswagen of America Closes 2010 with Best Overall Year Sales Since 2003," which touted the Company's success in selling its TDI clean diesel models:

Volkswagen of America, Inc. today reported that December 2010 marked a 17 percent increase over prior year sales for the entire line of vehicles. In addition, 2010 achieved a 20 percent increase over 2009 total year sales. Increased sales numbers resulted in best annual sales since 2003 and best December sales since 2005.

Volkswagen's impressive line-up of TDI Clean Diesels fared well again in December with Golf selling 56 percent of its models as TDI and the all-new Touareg selling 35 percent as TDI. Overall, 22 percent of Volkswagen models were sold with TDI Clean Diesel engines.

28.    On May 31, 2011, Volkswagen issued a press release entitled "US Department of Transportation Secretary Ray LaHood views Clean Diesel engines as a key component of future technology for highway transportation in the USA." The press release again touted the Company's clean diesels:

High-tech Clean Diesel engines from Volkswagen are a cornerstone in the environmentally-friendly renewal of individual mobility in the United States.

US Secretary of Transportation Ray LaHood focused on this Tuesday last week in his welcoming speech at the opening ceremony for Volkswagen's new plant in Chattanooga, Tennessee.

US Secretary of Transportation Ray LaHood emphasised that the USA finds itself in an era of transition towards a new form of mobility – and thanks to the innovative technologies of Volkswagen, clean diesel engines will play an important role in implementing a new powertrain strategy for the United States. "And that is not only because it is the right engine for environmental and climate protection in the USA.  Clean diesel engines also make sense economically, for both individuals and American companies.  The Clean Diesel technology that is found in the new US Passat, for example, makes a genuine difference."

In April 2011, the diesel share of vehicles sold by Volkswagen of America was 24 per cent.  This means that nearly one in every four Volkswagen brand cars delivered in the USA has a fuel-efficient and clean TDI engine.   The Volkswagen Group is the global market leader in diesel engine technology, and back in 2008 it was the first carmaker to offer diesel vehicles on the US market that conformed to the BIN-S standard, the most stringent emissions legislation in the world.  In America, the Volkswagen brand already offers four TDI clean diesel models, and the Audi brand offers two.  This year, the new Passat TDI and the Beetle TDI will be added.   Audi has announced that it will bring the TDI to the luxury class in the USA and offer TDI clean diesel engines in both the Audi A6 and Audi A8 in 2013.

Many experts consider these diesel engines to be the most advanced combustion engines of our times.   They combine minimum fuel consumption and the lowest emissions with maximum power. Depending on the specific model, Clean Diesel technologies may include an SCR catalytic converter – which reduces nitrogen oxide emissions (NOx) by up to 90 percent – or a NOx storage catalytic converter and oxidation catalytic converter, particulate filter, exhaust gas recirculation (EGR) and intelligent interventions by the electronic engine management system.

29.    On March 1, 2012, Volkswagen America issued a press release entitled

"Volkswagen Reports 42.5 Percent Increase in February U.S. Sales," which touted increased

demand for TDI clean diesels:

Volkswagen of America, Inc. (VWoA) today reported 30,577 units sold in February, a 42.5 percent increase over prior year sales and best February since 1973.

"February's strong sales of 30,577 units and back-to-back record months reflects the increasing consumer confidence in the marketplace and strong interest

for our products," said Jonathan Browning, President and CEO, Volkswagen Group of America, Inc.   "With escalating fuel prices, we anticipate increased demand for our full-range of fuel efficient vehicles, particularly our TDI Clean Diesel models, to continue into the spring selling season."

The 2012 Beetle sold 1,303 units.   The TDI Clean Diesel Coupe was unveiled this month at the Chicago Auto Show; it will go on sale late summer 2012.

Volkswagen's high-mileage, clean diesel TDI models account for 21.3 percent of sales in February, a 54.6 percent increase versus the prior month.

30.   On October 2, 2012, Volkswagen America issued a press release entitled "Volkswagen Reports a 34.4 Percent Sales Increase in September," again touting customer demand for clean diesel technology:

Volkswagen of America, Inc. (VWoA) today reported 36,339 units sold in September, a 34.4 percent increase over prior year sales, a 37.2 percent increase year-to-date and the best September since 1972.

"Tracking over a 37 percent increase year-to-date is a strong proof point that our products are on more shopping lists and gaining acceptance in the market," said Jonathan Browning, President and CEO, Volkswagen Group of America, IPc. "As we enter the fourth quarter of the year, we expect to continue our pattern of outperforming the industry."

The Beetle continues to gain momentum with 2,622 units sold. The Beetle TDI, sold 167 units, further highlighting customer demand for Volkswagen's Clean Diesel TDI technology.

31.   On January 3, 2013, Volkswagen America issued a press release entitled "Volkswagen Reports 35.1% Percent Increase in 2012 U.S. Sales," touting the sales of TDI clean diesels:

Volkswagen of America, Inc. (VWoA) today reported 438,133 units delivered in 2012, a 35.1 percent increase over prior year sales. December deliveries totaled 44,005, up 35.4 percent over 2011, marking the best December since 1970.

"2012 marked another successful year of growth for Volkswagen of America," said Jonathan Browning, President and CEO, Volkswagen Group of America, Inc." The Volkswagen brand delivered another important step in our long- term growth plan.   2012 marked the third consecutive year of significant double-digit growth rates and we more than doubled our volume of 2009.   With the

addition of the all-new Jetta Turbo Hybrid, Beetle Convertible and our strong dealer network, we expect to continue to outpace the industry in 2013."

Volkswagen's high-mileage, TDI® Clean Diesel models account/or 20.6 percent of sales in 2012 and 16.7 percent in December.

32.     On March 1, 2013, Volkswagen America issued a press release entitled "Volkswagen Reports 30th Consecutive Month of Sales Growth," which noted that "Volkswagen's high-mileage, clean diesel TDI models accounted for 22.4 percent of sales in February, a 10.9 percent increase over the prior year."

33.     On April 5, 2013, Volkswagen America issued a press release entitled "Volkswagen Spreads Diesel Gospel in Gotham." Defendants stated that that "[a]s the tide of clean-diesel sales in the U.S. market slowly rises, Volkswagen executives are happy to talk about their company's seminal role in successfully reintroducing diesel-powered automobiles to the American-market mainstream." Defendants further stated that "Volkswagen has been the leader of the mass-market re-introduction of diesel power to the U.S. market, while sibling brand Audi has taken the lead in the luxury segment… Diesel's fuel-efficiency advantage, as well as torque properties, make it an increasingly attractive choice for American consumers with a 'green' orientation who don't want hybrids or EVs."

34.     On December 20, 2013, Volkswagen America issued a press release entitled "It's Official: Volkswagen Group of America Has Sold More Than 100,000 TDI® Clean Diesel Vehicles in 2013." Defendants announced that Volkswagen "has sold 100,000 TDI® Clean Diesel vehicles from the Volkswagen and Audi brands this year. This is the first time it has reached this milestone in a calendar year." The press release further stated that "Audi and Volkswagen pioneered TDI® Clean Diesel engines and, as a result, the Volkswagen Group of America is the current market leader in Clean Diesel. Today's Clean Diesel engines

deliver more torque, better highway fuel consumption and reduced C02 emissions compared with equivalent gasoline engines."

35.     McNabb was quoted in the press release, stating:

"'[s]elling more than 100,000 TDI Clean Diesel vehicles is a significant milestone for Volkswagen Group of America… We're excited to see the increasing numbers of customers able to enjoy the reliability, durability, fuel-efficiency and power of the clean diesel engine." Keogh was also quoted in the press release, stating that "[t]he past year has shown that American consumers clearly recognize the benefits of clean diesel TDI vehicles… They understand now more than ever that this is a technology delivering real answers to society's concerns about fuel consumption and greenhouse gas emissions wit/tout compromises."

36.     On January 3, 2014, Volkswagen America issued a press release entitled "Volkswagen Reports December 2013 and Year End Results." Defendants stated:

Volkswagen of America, Inc. (VWoA) today reported 407,704 units delivered in 2013. December deliveries totaled 34,015.

Volkswagen's high-mileage, TDI® Clean Diesel models totaled 95,823 units for tile year accounting for 23.5 percent of sales in 2013 and 17.8 percent in December. Since 2000, Volkswagen of America has delivered over 500,000 TDI® Clean Diesel vehicles.

"Volkswagen is now operating at a new plateau, delivering over 400,000 units for the second consecutive year in over 40 years," said Mark McNabb, chief operating officer, Volkswagen of America, Inc. "We look forward to 2014, with the introduction of the new Golf family, continued increased awareness and enthusiasm for the brand's core models and the strength of our TDI offerings, we are well positioned for our next phase of growth to come over the next few years."

The Chattanooga-built Volkswagen Passat continues to demonstrate its strong appeal in the market with 9,254 units sold in December and 109,652 for the year. Clean Diesel TDI Passat sales were the best year on record with 34,963 vehicles delivered, accounting for 32 percent of sales of the year.

37.     On March 6, 2014, Volkswagen America issued a press release entitled "Volkswagen Group of America Releases 2013 Corporate Social Responsibility Report." Horn stated that "Volkswagen Group of America is united not only by our devotion to

building quality vehicles, but also by our commitment to doing what's right for the environment, our communities and our employees."   The press release also stated that "[c]utting-edge technologies have enabled Volkswagen to progress toward carbon-neutral vehicles, including… TDI® clean diesel vehicles.   In 2013, Volkswagen and Audi accounted for 75 percent of the U.S. market for clean diesel vehicle sales, enabling owners nationwide to achieve up to 30 percent improved fuel-economy compared to gasoline vehicles."

38.   On May 16, 2014, Volkswagen issued a press release entitled "Volkswagen Group Receives World Environmental Center's 30th Anniversary Gold Medal Award for Sustainable Development in 2014."   The press release stated that Volkswagen was "deeply honored to be recognized by the World Environment Center for our endeavors to create a society where conservation and eco-mobility are truly standard practices, not the exception… Volkswagen's holistic approach to sustainability instills eco-conscious behaviors in all aspects of its operations.   This includes following a strong set of environmental principles when building cars- at every stage of a vehicle's lifecycle."   The press release further stated that "Volkswagen Group offers the largest low-C02 fleet in the global market, with high-performing and efficient powertrain options, including TDI® Clean Diesel, Turbo Stratified Injection (TSI), hybrid, plug-in hybrid and electric."

39.   On January 5, 2015, Volkswagen America issued a press release entitled "Volkswagen Reports December 2014 Sales and 2014 Year-End Results," again touting sales of clean diesels:

> Volkswagen of America, Inc. (VWoA) today reported 34,058 units delivered in December, with 366,970 units delivered in 2014.
>
> "In 2014 Volkswagen of America enhanced the lineup of German engineered vehicles with an all-new, award-winning Golf family, a refreshed Jetta and most recently a refined Touareg," said Mark McNabb, chief operating officer,

Volkswagen of America. "As we kick off 2015, we are encouraged that the vehicles have been well received by both the automotive press and our dealers."

Volkswagen's high-mileage, TDI® Clean Diesel models totaled 79,422 units for the year, accounting for 21.6 percent of sales in 2014. In December, 5,348 units were sold, 15.7 percent of sales.

40.     On August 3, 2015, Volkswagen America issued a press release entitled "Volkswagen of America Reports July Sales Gain of 2.4 Percent Over July 2014," once again touting demand for clean diesel, and that a Volkswagen clean diesel model received a car of the year award:

Volkswagen of America, Inc. (VWoA) today reported sales of 31,300 units delivered in July 2015.

The all-new Golf family of vehicles continued to find success in the market. In July, Golf family sales totaled 6,717 units and the 2015 Golf TDI® Clean Diesel earned yet another accolade: a new GUINNESS WORLD RECORDS® achievement for the "lowest fuel consumption-48 U.S. contiguous States for a non-hybrid car" with a remarkable 81.17 mpg.

"We are encouraged by the consistent sales growth for the Golf across all models within the family. The latest Guinness World Records achievement for the Golf TDI adds to the suite of accolades which also includes the 2015 North American Car of the Year and Motor Trend Car of the Year," said Mark McNabb, chief operating officer, Volkswagen of America.

41.     These statements were knowingly false when made. Defendants knew, but concealed from the investing public during the Class Period that Volkswagen was utilizing a sophisticated defeat device in many of its diesel vehicles sold in the United States and around the globe that was designed and intended to detect when the vehicle was undergoing official emissions testing and turn the full emissions controls on only during the test. At all other times, however, those emissions controls were not fully activated, meaning that pollution was freely released into the environment at levels that far exceeded those allowed by federal and state clean air regulators.

14

42.     Defendants' statements regarding Volkswagen's past and future sales, income and profitability were materially false and misleading because Defendants failed to disclose that such sales, income and profitability were only achieved by misleading its customers, government regulators and investors regarding the operation, performance and environmental impact of its diesel engines, which contributed materially to such sales.

43.     Defendants' statements regarding "Clean Diesel," as well as their statements regarding Volkswagen's commitment to sustainability and environmental protection, were materially false and misleading because Volkswagen's diesel engines emitted far more pollutants than Defendants had represented, and Defendants concealed the environmental impact of the Company's diesel engines by intentionally manipulating such engines to prevent their misconduct from being detected.

44.     Defendants also knew that Volkswagen was exposed to the risk of suffering billions of dollars in damages from fines, penalties, judgments and reputational damage, among other things, if its unlawful misconduct were discovered.

### *Volkswagen Admits Its Misconduct*

45.     The conduct alleged herein and the materially false and misleading statements and omissions made during the Class Period caused Volkswagen ordinary and preferred ADRs to trade at inflated prices during the Class Period, and operated as a fraud or deceit on investors in the Company's ADRs.

46.     Later, as a direct result of the truth being disclosed regarding Defendants' conduct, the prices of Volkswagen's ADRs suffered significant declines as the artificial inflation began to come out of the prices.

47.     On September 18, 2015, the EPA publicly disclosed that Volkswagen had installed sophisticated software in Volkswagen and Audi diesel vehicles sold in the United States that could detect when the vehicle was undergoing official emissions testing and turn the full emissions controls on only during the test.   At all other times, however, the emissions controls were deactivated, meaning that pollution was freely released into the environment at levels exceeding those allowed by federal and state clean air regulators.   This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

48.     That same day, *The New York Times* published a front-page article entitled "U.S. Orders Major VW Recall Over Emissions Test Trickery."  The article reported that the Company had "illegally installed software in its diesel-power cars to evade standards for reducing smog" and that Volkswagen had "admitted to the use a so-called defeat device.  The recall involves 4-cylinder Volkswagen and Audi vehicles from model years 2009-2015."  The article also reported that the DOJ had opened an investigation and that fines of as much as $18 billion could be imposed as a result of defendants' misconduct.

49.     On this news, the prices of Volkswagen's ADRs declined.  The price of the ordinary ADRs fell 4.5%, from a close of $38.03 per share on September 17, 2015 to $36.31 per share on September 18, 2015.  The price of the preferred ADRs fell 4.2% from a close of$38.05 per share on September 17, 2013 to $36.47 per share on September 18, 2015.

50.     On September 20, 2015, Volkswagen's CEO, Winterkorn, issued a statement regarding the EPA's findings of "manipulations that violate American environmental standards" in Volkswagen diesel cars.  Winterkorn admitted that Volkswagen had "broken the trust of our customers and the public," and had begun an external investigation regarding the misconduct.  Volkswagen ordered its United States dealerships to stop selling cars impacted by

the investigation until further notice.  A Volkswagen spokesperson later acknowledged unequivocally that "[t]he manipulation of the installed software did occur."  Horn told an audience in New York at a launch event for a new model that: "In my German words, we totally screwed up."

51.    On this news, the prices of Volkswagen's ADRs declined again.  The price of the ordinary ADRs fell 17% from a close of $36.31 per share on September 18, 2015 to $30.10 per share on September 21, 2015.  The price of the preferred ADRs fell 18.4% from a close of $36.47 per share on September 18, 2015 to $29.77 per share on September 21, 2015.

52.    On September 22, 2015, Volkswagen issued a press release providing further details on the breadth of the Company's misconduct.  The Company reported that "[f]urther internal investigations conducted to date have established that the relevant engine management software is also installed in other Volkswagen Group vehicles with diesel engines… Discrepancies relate to vehicles with Type EA 189 engines, involving some eleven million vehicles worldwide."  The Company also reported that it had set aside a provision of €6.5 billion in the third quarter of 2015 related to the misconduct.  This news was quickly reported by news outlets across the world, including an article in *The New York Times* entitled "Volkswagen Says 11 Million Cars Worldwide Are Affected in Diesel Deception."

53.    On this news, the prices of Volkswagen's ADRs declined further.   The price of the ordinary ADRs fell 15.5% from a close of $30.10 per share on September 21, 2015 to $25.44 per share on September 22, 2015.  The price of the preferred ADRs fell l9.5% from a close of $29.77 per share on September 21, 2015 to $23.98 per share on September 22, 2015.

54.    On September 23, 2015, Winkerton resigned from Volkswagen, saying in a statement that "I accept responsibility for the irregularities that have been found in diesel

engines." *The New York Times* reported that Winkerton's claimed denial of "any wrongdoing on my part" was inconsistent with the normal practice at the Company, as "Volkswagen has long been known as a top-down organization, where even relatively minor decisions require approval from the high-rise executive office building."  On September 28, 2015, prosecutors in Germany disclosed that they have begun a criminal investigation of Winkerton.

55.     The timing and magnitude of the declines in the price of Volkswagen ADRs negates any interference that the losses suffered by Plaintiffs and other Class members were caused by changed market conditions, macroeconomic factors or Company-specific facts unrelated to defendants' fraudulent conduct.

## NO SAFE HARBOR

56.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Volkswagen who knew that those statements were false when made.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Volkswagen Ordinary ADRs and Preferred ADRs during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Volkswagen, Volkswagen America and Audi America, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58.     The members of the Class are so numerous that joinder of all members is impracticable.  The ADRs were actively traded on the OTC market during the Class Period. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are at least hundreds of members in the proposed Class.

59.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the Exchange Act as complained of herein.

60.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Volkswagen;

c.      whether the Individual Defendants caused Volkswagen to issue false and misleading statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the price of Volkswagen ADRs during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, in what amount.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a Class action.

**APPLICABILITY OF THE PRESUMPTION OF RELIANCE:**
**<u>FRAUD ON THE MARKET</u>**

63.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

        a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

        b.      the omissions and misrepresentations were material;

        c.      Volkswagen ADRs were traded in an efficient market during the Class Period;

        d.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of Volkswagen ADRs; and

        e.      Plaintiffs and members of the Class purchased, acquired and/or sold Volkswagen ADRs between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

64.      Based upon the foregoing. Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

65.      Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah* v. *United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Against All Defendants for Violations of
### Section 10(b) of the Exchange Act and Rule 10b-5

66.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

67.     This Count is asserted against all Defendants and is based upon Section 10(b) of
the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17
C.F.R. §240.10b-5.

68.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and
course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,
practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the
other members of the Class; made various untrue statements of material facts and omitted to state
material facts necessary in order to make the statements made, in light of the circumstances
under which they were made, not misleading; and employed devices, schemes and artifices to
defraud in connection with the purchase and sale of securities.  Such scheme was intended to,
and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and
other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of
Volkswagen ADRs; and (iii) cause Plaintiffs and other members of the Class to purchase or
otherwise acquire Volkswagen ADRs at artificially inflated prices.  In furtherance of this
unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth
herein.

69.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the
Defendants participated directly or indirectly in the preparation and/or issuance of the statements
and documents described above, including statements made to securities analysts and the media
that were designed to influence the market for Volkswagen ADRs.  Such reports, filings, releases

22

and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Volkswagen's operations.

70.    By virtue of their positions at Volkswagen, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Such acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

71.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Volkswagen, the Individual Defendants had knowledge of the details of Volkswagen's internal affairs.

72.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Volkswagen.  The Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Volkswagen's operations.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Volkswagen ADRs was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Volkswagen's operations, Plaintiffs and the other members of the Class

purchased or otherwise acquired Volkswagen ADRs at artificially inflated prices, and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

73.     During the Class Period, Volkswagen ADRs were traded on an active and efficient market.  Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Volkswagen ADRs at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired those securities, or would not have purchased or otherwise acquired them at the inflated prices they paid.  At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Volkswagen ADRs were substantially lower than the prices paid by Plaintiffs and the other members of the Class.  The market price of Volkswagen ADRs declined sharply upon public disclosure of the facts alleged herein, resulting in injury to Plaintiffs and Class members.

74.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of Volkswagen ADRs during the Class Period, upon the disclosure that the Company had been disseminating false statements to the investing public.

## COUNT II

### Against The Individual Defendants For Control Person Liability
### Under Section 20(a) of the Exchange Act

76.    Plaintiffs repeats the allegations set forth above as if fully set forth herein.

77.    During the Class Period, the Individual Defendants participated in the operation and management of Volkswagen, and conducted and participated, directly and indirectly, in the conduct of Volkswagen's business affairs.  Because of their senior positions at the Company, they knew the adverse non-public information about Volkswagen's misstatement of income and expenses and false financial statements.

78.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Volkswagen's financial condition and results of operations, and to correct promptly any public statements issued by Volkswagen which had become materially false or misleading.

79.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Volkswagen disseminated in the marketplace during the Class Period concerning Volkswagen's results of operations.

80.    Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Volkswagen to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Volkswagen within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged that artificially inflated the market price of Volkswagen ADRs.Each of the Individual Defendants, therefore, acted as a controlling person of Volkswagen.

81.     By reason of their positions as senior management and/or directors of Volkswagen, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Volkswagen to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Volkswagen and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

82.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Volkswagen.

WHEREFORE, Plaintiffs demands judgment as follows:

A.     Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiffs and certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding such equitable/injunctive or other relief in Plaintiffs' favor as deemed appropriate by the Court.

## **<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury for all claims so triable.

Dated: September 29, 2015

**GARDY & NOTIS, LLP**


By: ___*s/ James S. Notis*_____
Mark C. Gardy
James S. Notis
Jennifer Sarnelli
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 207-567-7337

*Counsel for Plaintiff*